IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Elizabeth Runyan,

    Plaintiff,

vs.                                      Case No. 10-2440-JTM

Michael J. Astrue, Commissioner of Social
Security,

    Defendant.

MEMORANDUM AND ORDER

Plaintiff Elizabeth Runyan has applied for Social Security disability income benefits. Her application was denied by the Administrative Law Judge (ALJ) on April 6, 2009, a decision affirmed by the Appeals Council on July 29, 2010. There are three allegations of error by Runyan. First, that the ALJ failed to properly consider medical evidence. Second, that the ALJ failed to determine the existence of a severe impairment of obesity, pursuant to S.S.R. 02-1p. Third, that the ALJ misstated the record.

Plaintiff-claimant Runyan was born on May 7, 1972. She has stated that she became disabled beginning May 12, 2005. She has two years of college education. She has previously worked as a bookkeeper, cashier, customer service representative, receptionist, bank teller, and day care teacher. In her Disability Report, Runyan was asked to list the illnesses which restricted here ability to work

and she responded "Bipolar, migraines, sleep apnea, polycystic ovarian syndrome." (Tr. 160.) She also cited temporomandibular joint disorder (TMJ). (*Id.*) The detailed facts of the case, which are incorporated herein, are set forth in detail in the ALJ's opinion (Tr. 20-25) and the brief of the Commissioner (Dkt. 11, at 1-10).

The ALJ concluded that Runyan suffered from a variety of severe impairments. These included moderate pain in her head, neck, hips, and abdomen, moderate psychiatric impairments that could be controlled by medication, and a variety of other conditions "including obesity, fatigue, sleep apnea polycystic ovary syndrome" that were also moderate in effect and could be controlled by medication. He further found that Runyan retained the residual functional capacity to perform light work, with certain exceptions:

> lift and carry 20 pounds occasionally and 10 pounds frequently; stand one hour at a time up to four hours in an eight hour workday; walk for about 10 minutes at a time and one hour in an eight hour workday; sit for two hours at a time up to six hours in an eight hour workday; avoid climbing ladders, ropes and scaffolds; kneeling and crawling; occasionally climb, balance, stoop, and crouch; frequently push/pull with her extremities and use her lower extremities for foot pedals on a frequent basis; frequent reaching; avoid unprotected height and moving machinery; occasionally work around excessive amounts of fumes, dust, and gases; frequently be subject to vibration and extreme humidity and wetness; but only occasionally be around extreme temperatures; and moderate restriction of working around excessive noise; she can frequently drive vehicles.

Tr. 22. With appropriate medication, the ALJ found, Runyan could "moderately carry out complex work instructions, and can make judgments on complex work decisions; respond appropriately to usual work situations and to changes on routine work setting." *Id.* The ALJ noted that this RFC was generally consistent with that of the consulting physician Dr. Wayne Spenser.

The ALJ found that Runyan's description of her condition was only partially credible. He noted that she "rarely sought medical treatment or complained of any symptoms other than the

psychological symptoms," and that when she did seek treatment, "it is for routine care and for unrelated ailments. She does not report any physical symptoms to her physicians on a number of occasions. She has not required any consistent treatment for physical problems. Tr. 23. Further, her

> description of symptoms has been quite vague and general, lacking the specificity which might otherwise make it more convincing. The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. The claimant's use of medications does not suggest the presence of an impairment(s) which is more limiting than found in this decision.

Tr. 24.

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: she must show that she is engaged in substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

3

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

With respect to her first argument, Runyan provides a list of body weights contained in the record (xxx, at 3) which varies between 241 and 350 pounds (with an average weight of 308.75 pounds), a list of medical sources which sometimes reference obesity as an impairment and sometimes do not (id., at 4-5), and the in particular cites the failure of the ALJ to explicitly reference the December 3, 2008 GAF assessment of 42 rendered by one medical source. The ALJ's RFC does reference the opinion, but doesn't consider that medical source's GAF.

Dr. Spencer concluded Plaintiff was not able to sustain "gainful employment," and he assigned her a GAF score of 42 (Tr. 373). While the ALJ did not explicitly address the GAF assigned by Dr. Spenser, this does not constitute reversible error under the facts of the case. An ALJ need not individually discuss each separate piece of evidence. Crane v. Astrue, 369 F.3d Appx. 915, 920 (10th Cir. 2010). Here, the ALJ specifically agreed with medical evidence showing a GAF score of 55, as

reelecting Runyan's ability to perform limited work with moderate difficulty. The ALJ specifically referenced all of the treatment notes in the record (which would have included Dr. Spencer's assessment) and also specifically found that more restrictive GAF assessments were inconsistent with both Runyan's description of her daily activities and other evidence in the record. (Tr. 23).

Runyan makes particular emphasis on Dr. Spencer's weight measurement (241 pounds) and argues that this represents such an unexplained outlier of measurements (which generally average more than 300 pounds, and most typically 350 pounds) that his entire opinion must be discounted. (Dkt. xxx, at 10).

The court finds no error. The 241 pound figure played no decisive element in the ALJ's opinion, as he specifically agreed that Runyan "is morbidly obese, weighing approximately 350 pounds." The 241 pound entry was simply a transcription or typographic error for 341 pounds, an error which played no role in the ALJ's decision. More importantly, the ALJ was not required to ignore the remainder of Dr. Spenser's evaluation merely because of this single error. Had Dr. Spenser merely reviewed a medical chart containing only an entry of 241 pounds for Runyan's weight, the remainder of his opinion would certainly be suspect. But his report was clearly based his direct examination and observation of Runyan. This examination included direct observation of Runyan's gait over a 200 foot distance, as well as nerve motor, and strength testing. (Tr. 355). Nor was Dr. Spenser under any sort of misapprehension as to Runyan's obese state. He observed that "[h]er bulk certainly creates a situation where she would not be able to perform anything of an athletic nature [and] would have problems with climbing more than a few steps occasionally throughout the day." Nevertheless, he concluded: "I do not see major problems with her standing for periods of time and she could function sitting." (*Id.*)

Second, as noted earlier, Runyan also contends that the ALJ's opinions contains misstatements of the record. Specifically, she contends that the ALJ erred in stating that she worked part-part time and was taking college courses, citing her answers to the ALJ's questions in which she denied engaging in any work and stating that in December of 2008, she had withdrawn from her college classes. (T. 413, 424). In addition, she argues that the ALJ erred in stating that her obesity could be controlled through medication. (Tr. 20, 22).

But the ALJ was not obliged to take the plaintiff's hearing testimony at face value. There is ample evidence in the record that Runyan participated in college courses, worked part-time, and even full-time jobs (Tr. 23-24, 127, 130, 148, 150, 179, 249, 261, 274, 278, 288-89, 305-06, 308-09, 311, 332, 371). Runyan told the ALJ that she had worked as a customer service representative up to 2008, some three years after the onset date of her alleged disability. While at the time of the hearing Runyan otherwise denied *currently* engaging in employment or attending educational classes, the ALJ was not required to ignore recent history. He specifically noted that Runyan had previously "admitted that she returned to working part-time in April 2006 and worked as a customer service representative until at least June 2008, but her work report indicates she was working as a customer service representative as early as August 2005 [and] was also working for a temp service in 2008." Substantial evidence supports these conclusions. (Tr. 189). Dr. Schemmel noted that Runyan was currently carrying a six credit hour load of community college classes and that she had already completed 120 credit hours (Tr. 371). There is also evidence that Runyan spent her time babysitting, attending church and teaching Sunday school classes, and selling Avon products.

In addition, a fair reading of the ALJ's opinion does not suggest that he was specifically concluding that Runyan's obesity could be and was being controlled by medication, but that other

6

"miscellaneous" impairments, including those indirectly associated with obesity, were subject to successful medicinal treatment. That is, Runyan received medication for her polycystic ovarian syndrome, bronchitis, depression, mood, migraines, and acid reflux. (Tr. 164). Substantial evidence supports this conclusion.

Finally, Runyan complains that the ALJ did not comply with SSR 02-1p by failing to consider the effect that her obesity might have on her other impairments. SSR 02-1p provides that an individual's obesity should be considered in conjunction with other impairments. Runyan notes that of the mental health medical sources, only treating psychiatrist Teresa Varanka mentions obesity, and none explicitly considers how obesity might affect her mental condition.

However, the fact that many of the medical sources failed to separate consider obesity is doubtless due to Runyan's own failure to cite obesity as an impairment in her disability application. That is, as noted earlier, Runyan listed a wide variety of ailments in her application, none of which included her obesity. In *Briggs v. Astrue,* 221 Fed.Appx. 767, 770-771 (10th Cir. 2007), the court held that it was not error for an ALJ to fail to find obesity as a severe impairment where the plaintiff did not cite obesity as an impairment in his application or otherwise show a limitation linked to the obesity.

Nevertheless, the ALJ here explicitly considered Runyan's obesity and found it an impairment, but concluded that she was not disabled. This assessment did not represent a departure from SSR 02-1p, which requires a consideration of the combined effect of obesity and other impairments where it is justified by evidence in the record. As the plaintiff, Runyan has the burden to show evidence of a disability. In the present case, plaintiff has provided no medical evidence that her other impairments, including her mental condition, were tied to her obesity. To the contrary, the

record fails to contain evidence showing her obesity exacerbated her other impairments over time.

Further, the ALJ explicitly adopted his conclusions as to Runyan's RFC upon "careful consideration of all the evidence." (Tr. 18). The ALJ also explicitly stated that this RFC was a reflection of "all of the claimant's impairments, including impairments that are not severe," and that he considered the existence of any "severe impairment or combination of impairments." (Tr. 19). As noted earlier, the ALJ is not required to separately address each piece of evidence and each argument which might in hindsight be advanced by a claimant. Rather, statements that an ALJ has considered all of the evidence and the combined effect of potential impairments are statements are to be taken at face value at face value. *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1500 (10th Cir. 1992). And here the ALJ considered both Runyan's obesity and various limitations associated with disability, such as standing and lifting restrictions, in reaching his conclusion as to Runyan's RFC. The ALJ's assessment of the combined effect of Runyan's impairments does not constitute reversible error.

IT IS ACCORDINGLY ORDERED this 25th day of May, 2011, that the present appeal is hereby denied.

s/ J. Thomas Marten  
J.. THOMAS MARTEN, JUDGE